231 S.W.2d 345 (1950)
CLOUSE
v.
GARFINKLE et al.
Supreme Court of Tennessee.
March 17, 1950.
On Petition to Rehear June 9, 1950.
*346 Stockell & Finney, J. D. Mosby and W. N. West, all of Nashville, for complainant.
Claude Callicott, Nashville, for the City.
Elkin Garfinkle, Nashville, for Sam Garfinkle.
GAILOR, Justice.
The bill in this cause was filed by Clouse against Garfinkle and the City of Nashville, to clear the title to a certain triangular tract of land abutting on the new Murfreesboro Pike in Nashville, Tennessee. The land was formerly a part of lots 1 and 2 of the O. Ewing plan on the western margin of Ewing Avenue. By condemnation, the City acquired its rights in the land from one Catherine E. Hicks. After the new street was widened and improved, there was left this small triangular tract. By ordinance, the City of Nashville declared that this tract was abandoned and was not necessary for the improvement, and thereafter, in consideration of a claim which Defendant Garfinkle had against the City, the City deed to him this triangular tract of land. Some months after this, the original owner, Catherine E. Hicks, quit-claimed to the Complainant B.C. Clouse, this same triangular tract of land, and to clear his title, the Complainant filed the present bill.
The Chancellor decided the case for the Complainant and on appeal, the Court of Appeals reversed. On account of the disagreement we granted certiorari.
For the Complainant Clouse, it is insisted that the City, by condemnation for street purposes, acquired only an easement in the land, and that when by resolution, the City evidenced its abandonment of the surplus triangle, that there was a reverter to Mrs. Hicks, and that she therefore conveyed clear title to the triangle to the Complainant Clouse. On the contrary, it is insisted for the Defendants that by the decree by which the City acquired its rights from Mrs. Hicks, the City took her entire property in fee simple, paid adequate consideration therefor, and therefore, had good title to convey to the Defendant Garfinkle.
Evidently, the controversy is to be determined by proper construction of the decree in the condemnation proceedings in the light of the surrounding facts and circumstances. In July 1944, the City decided to improve and widen Lafayette Street from *347 2nd Avenue to 8th Avenue, and to effect that improvement, passed an ordinance, a part of which is as follows:
"The City of Nashville further ordains that the City Attorney be, and he is, hereby, instructed to institute proceedings provided in Section 3109 of the Code of Tennessee of 1932 by the City of Nashville, for the taking and appropriation by the City of Nashville of certain tracts of land hereinabove described in Section One of the Ordinance for the purpose of widening, opening and extending Lafayette Street as aforesaid."
Pursuant to and limited by this authority, the City Attorney filed the condemnation proceeding and the public purpose of the condemnation was stated to be as follows:
"Public necessity exists for the City of Nashville to acquire and hold for a public highway and street purposes * * *."
After the filing of the bill and proceeding under the provisions of sections 3109 et seq., as authorized by the ordinance, a jury of view was selected and made an award to Mrs. Hicks, fixing the value of the land taken at $1,000 and incidental damages at $6,500, or a total award of $7,500. Both parties, being dissatisfied with this award, perfected their respective appeals to the Circuit Court in the usual way, and while the case was pending there and before the trial had been had before a jury, a decree of compromise and settlement was entered on May 19, 1945. The pertinent parts of this decree are as follows:
"This cause came on to be heard this the 19th day of May, 1945, before the Honorable E.F. Langford, Judge, on the pleadings and all former proceedings in the case, and especially on that portion of the Report of the Jury of View heretofore appointed by the Court which relates to the parties and the land hereinafter set out, and to which report both the City of Nashville and the Defendant, Catherine E. Hicks, excepted.
(Here follows Report of Jury of View.)
"And it appearing to the Court that the parties have reached a settlement in this matter whereby the City of Nashville agrees to pay for said property the sum of Fifteen Thousand ($15,000) Dollars, the City of Nashville to retain the salvage;
"And it further appearing to the Court that the City of Nashville has the right under the law of eminent domain to condemn the property hereinafter described for the purposes recited in the original petition;
"It is, therefore, ordered, adjudged and decreed by the Court that the Defendant, Catherine E. Hicks, have and recover of the City of Nashville the sum of Fifteen Thousand ($15,000) Dollars for said parcel of land taken in said proceedings and hereinafter described as Parcel No. 31.
"It is further ordered, adjudged and decreed by the Court that the title to said tract of land condemned and mentioned and described as follows:
(Here follows description.)
"be and the same is hereby divested out of Defendant, Catherine E. Hicks, and vested in the City of Nashville, to be used for the purposes for which it was condemned. ................................
"O.K. for entry:
"W.C. Cherry, City Attorney
"Jacobs H. Doyle, Atty. for Deft.
 /s/ E.F. Langford, Judge."
While this is a consent decree, as is shown by external evidence, it was so only to the extent that the amount of compensation was agreed upon. The sale by Mrs. Hicks was still an unwilling sale to the sovereign in its exercise of the right of eminent domain. The decree recites expressly that the City acquires its rights by condemnation and the exercise of its power of eminent domain, and the Trial Judge found that the City had the right to acquire the property in the exercise of its right of eminent domain for the public purpose set out in the petition of condemnation. Furthermore, the agents of the City, who were conducting the lawsuit and condemning the property, had only such authority as was given them in the enabling ordinance. Clearly, the extent of the authority was to acquire the property for use as a public street, under section 3109 et seq. of the Code. The ordinance expressly so provides. The agents of the City had no authority *348 to proceed to acquire the fee under Code sec. 3397, and from the repeated recitals that they were proceeding under Code sec. 3109, it is evident that the rights given the City under Code sec. 3398 have no application here. It is the general rule, supported by a number of our cases, that in the exercise of the power of eminent domain, the sovereign or its delegate has the right to take only so much property as may be necessary for the public improvement in hand, and that in the case of streets or highways, an easement only, is necessary.
"The streets of cities and towns belong to the public, and the municipality where they are located holds them in trust for it. This interest of the public is generally defined and held to be an easement. Humes v. Mayor and Aldermen, 20 Tenn. 403, 34 Am. Dec. 657." McHarge v. Newcomer & Co., 117 Tenn. 595, 604, 100 S.W. 700, 9 L.R.A., N.S., 298; State v. Taylor, 107 Tenn. 455, 463, 64 S.W. 766; Hamilton County v. Rape, 101 Tenn. 222, 225, 47 S.W. 416; Iron Mountain Railroad Co. v. Bingham, 87 Tenn. 522, 530, 11 S.W. 705, 4 L.R.A. 622; Smith v. East End Street Railroad, 87 Tenn. 626, 630, 11 S.W. 709; Tenn. Power Co. v. Rust, 8 Tenn. Civ. App. 368; State of Georgia v. Chattanooga, 4 Tenn. App. 674.
"We are of opinion that the grant presumed to have been made by Telford was a grant not of the fee, but of an easement. The doctrine of eminent domain rests upon the presumed necessity for the taking of private property for a public use. The taking, to be consistent with this theory, must, therefore, ordinarily be limited to the apparent necessities of the public." East Tenn. V. & G. Railway Co. v. Telford's Executors, 89 Tenn. 293, 297, 14 S.W. 776, 10 L.R.A. 855.
"Upon the principle that statutes conferring compulsory power are to be strictly construed, it follows that, where the estate taken is not defined, only such an estate or interest will vest as is necessary to accomplish the purposes in view, and where an easement is sufficient, no greater estate can be taken." (Emphasis ours.) Lewis on Eminent Domain, sec. 449.
"Where land is appropriated to the public use under the right of eminent domain, and against the will of the owner, we have seen how careful the law is to limit the public authorities to their precise needs, and not to allow the dispossession of the owner from any portion of his freehold which the public use does not require. This must be so on the general principle that the right, being based on necessity, cannot be any broader than the necessity which supports it. For the same reason, it would seem that, in respect to the land actually taken, if there can be any conjoint occupation of the owner and the public, the former should not be altogether excluded, but should be allowed to occupy for his private purposes to any extent not inconsistent with the public use. As a general rule, the laws for the exercise of the right of eminent domain do not assume to go further than to appropriate the use, and the title in fee still remains in the original owner." Cooley's Constitutional Limitations, (8th ed.) Vol. 2, p. 1193.
The case of Tenn. Power Company v. Rust, 8 Tenn. Civ. App. 368, is authority for the proposition that under section 1844 of Shannon's Code, now Williams' Code, sec. 3109, the condemnor cannot acquire the fee. In that opinion it was said at pages 375-6:
"With these authorities before us and to govern our consideration and determination of this case it seems clear that condemnation statutes will be strictly construed and no power to take the fee is vested unless expressly given in and by the statute. Where the right to take the fee is claimed, that right must be clear and not subject to uncertainty or doubt. If an easement will answer the purposes for which the land is to be used, then the fee will not be divested out of the owner of the land and vested in the corporation for a public use." Tenn. Power Co. v. Rust, 8 Tenn. Civ. App. 368.
In another Tennessee case it was held that the public necessity being a highway, the condemnation of the fee was error:
"When the present case was tried before the chairman of the county court, after establishing the road, he divested title out *349 of the plaintiff in error and vested it in the public, and this was affirmed by the circuit judge. This matter is complained of here. We are of opinion that the order of the county court, and also the judgment of the circuit court, was in that respect erroneous. The public obtains no title to the road, but only an easement, or right of way, so far as the same may be necessary to render effective and operative in the public the right to occupy and use as a public road the land laid off as such." Carroll v. Griffith, 117 Tenn. 500, 505, 97 S.W. 66, 67.
If, from the language of the decree, there is any doubt whether an easement or the fee was acquired, that doubt must be resolved against the City, as the party seeking to exercise the power of eminent domain. City of Chattanooga v. State, 151 Tenn. 691, 272 S.W. 432; Chicago, St. L. & N.O. Railroad v. Moggridge, 116 Tenn. 445, 92 S.W. 1114; Woolard v. Nashville, 108 Tenn., 353, 361, 67 S.W. 801; White v. Nashville & N.W. Railroad Co., 54 Tenn. 518, 540; Cooley's Constitutional Limitations, supra.
As the Chancellor found and held, there is a further rule by the application of which doubts arising from the language of the decree must be resolved against the City. The record shows that the order was prepared by the City Attorney. It is a well recognized rule of construction that doubts in an ambiguous instrument should be resolved against the party who drew the instrument. Standard Oil Co. v. Storage Co., 163 Tenn. 565, 44 S.W.2d 317.
The City insists that because by the order in the Circuit Court, "the title" to the tract of land was divested out of Mrs. Hicks and vested in the City of Nashville, that use of the word "title" necessitates a construction that a fee simple title was vested in the City. This argument overlooks the final clause of the paragraph of the order in the Circuit Court by which title was vested and divested, that clause was "to be used for the purposes for which it was condemned." Further, this same argument with regard to the implication of the word "title" was made and rejected in the Telford case, supra, where the Court said:
"When the statute does not clearly authorize the condemnation of the fee, the easement alone should be condemned. This charter method of condemnation does not expressly condemn the fee and we think the `grant' presumed, and the `title' acquired, is a grant of an easement, and the title to the easement, and nothing more. Cooley, Const. Lim. (5th Ed.) 691; Washington Cemetery Co. v. Prospect Park & C.I. Railway Co., 68 N.Y. [591], 594; Lewis' Em. Dom. § 278." East Tenn. V. & G. Railway Co. v. Telford's Executors, 89 Tenn. 293, 297-298, 14 S.W. 776, 10 L.R.A. 855.
From all these authorities it is clear that the statutes giving the power of eminent domain will be construed strictly against the condemnor, that in a very large majority of cases, at least, cities have only an easement in their streets, and the Courts have universally refused to enlarge the interest by implication. It results that the decree of the Court of Appeals is reversed and that of the Chancellor affirmed. Defendants will pay the costs.
NEIL, C. J., dissents.
NEIL, Chief Justice (dissenting).
I cannot agree with the majority opinion that the City of Nashville acquired only an easement in the land which was condemned for the widening and rebuilding of Lafayette Street. It is undisputed that in order to open and extend the street from 2nd Avenue to 8th Avenue it became necessary for the city to obtain title to many pieces of property, including that which belonged to Mrs. Hicks. And it was manifestly a difficult matter to determine with exactness the amount that might be needed for this improvement. In the condemnation proceedings it was alleged in the bill: "Public necessity exists for the City of Nashville to acquire and hold for a public highway and street purposes * * *".
The jury of view awarded the property owner the sum of $7,500.00 and later, while the case was pending on appeal she was paid as a compromise settlement the sum *350 of $15,000.00. She now claims the absolute title to the small triangle which was not used by the city in opening the street notwithstanding the judgment of the circuit court divested title out of her and vested it in the City of Nashville. It is argued that there was vested in the city only "title to an easement" because the judgment of the court recited that title was divested out of Catherine E. Hicks and vested in the City of Nashville, "to be used for the purpose for which it was condemned". This was a consent decree and I am unable to agree that it was a consent only as to the amount of compensation. Of course it was acquired for a public purpose. But this is not inconsistent with the right to a fee in the land. It is quite true that the law favors an easement rather than a fee where the extent of the right is doubtful. At the same time it cannot be said that a municipality cannot acquire other than an easement in land for opening, widening and improving a street.
In 1923 the Legislature enacted the following statute, the same being brought into Williams' Code as Section 3398:
"Municipal corporations are empowered to condemn the fee.  Whether any municipal corporation shall seek to condemn lands to be used in establishing, widening, extending, or otherwise improving its public streets, alleys, highways, parks, parkways, or boulevards, it shall have full power to condemn the fee of the land necessary to be taken, by paying the fair cash market value thereof to be fixed in the manner provided by law where private property is taken for public use."
Considering the amount of money which the city paid the owner for this property ($15,000.00) it is inconceivable to my mind that it was only for a right of way and not a full title to the land. It represented "the fair cash value" of the property, and there is nothing in the record to indicate that the owner did not fully understand that she was parting with the fee. I readily concede that there is and should be a limitation upon the power to condemn property, i.e. it must be for a public purpose, otherwise the power could be abused to the possible injury to property owners. But no one contends that the power has been in any sense abused in the instant case. If it is necessary for a city to acquire a fee for a public purpose, which is often the case, and pay the full cash value for it, the property owner should not have the right to assert title by way of reversion to that portion which had not been wholly used without refunding to the city the reasonable value of that which he seeks to reclaim.
Under Code Section 3398 full authority was granted municipalities to acquire a fee by condemnation, and the power to condemn was not restricted to procedure as outlined in Sections 3397, 3398, 3401 of the Code. The case of Tenn. Power Co. v. Rust, 8 Tenn. Civ. App. 368, cited in the majority opinion and holding that it was beyond the jurisdiction of the court to condemn the fee, was decided in 1918 and long before the passage of Chapter 76, Acts of 1923 and appears in the Code under Section 3398. I fail to see wherein the city in proceeding under Section 3109 et seq. of the Code is thereby precluded from acquiring a fee simple title.
I am unable to agree with the majority that the concluding words of the decree divesting and vesting title, "to be used for the purposes for which [the land] was condemned" operates to give the city only an easement. The word "title" denotes "full, independent and fee ownership." In re Pelis' Estate, 150 Misc. 918, 271 N.Y.S. 731, 733; Thompson on Real Property, Vol. 5, Section 2395.
In Carroll v. Griffith, 117 Tenn. 500, 505, 97 S.W. 66 the Court was dealing with the authority of the trial court to divest title out of the owner and vest the fee in the public. The decision was that it could not. I find no fault with this holding since the statute then under consideration did not authorize the taking of the fee.
In 19 Am. Jur. (Estates) Section 36 it is said:
"Grant for Particular Purpose.  The general rule is well settled that the mere expression that property is to be used for a particular purpose will not in and of itself suffice to turn a fee simple into a determinable fee."
*351 In Section 72 is found the following statement:
"Examples of the application of the rule that a mere recital of purpose does not import a condition will be found in grants for the erection of various public buildings and for municipal purposes generally, for the erection of shoolhouses, for school grounds and educational purposes, for churches, for cemeteries, for highway purposes, for railroad use, for county purposes, and for use of a particular business."
The above text is supported by Murdock v. Memphis, 47 Tenn. 483; Newman v. Ashe, 68 Tenn. 380; Walker v. County School Board, 150 Tenn. 202, 263 S.W. 792.
In Nashville C. & St. L. Ry. v. Bell, 162 Tenn. 661, 39 S.W.2d 1026 the Court held that a deed to the railroad containing language of the same import as in the instant case conveyed a fee and not an easement. To the same effect is Baird v. Southern Railway Co., 179 Tenn. 366, 166 S.W.2d 617.
The petition for condemnation in the instant case shows beyond question that the City of Nashville intended to acquire a fee simple title. It does not seek a "right of way" or an "easement", but specifically prays that the "title" be vested in the city, and that "upon the determination of the value of the fee etc. that the city be permitted to pay into court the value of said fee to each of the properties." (Emphasis supplied.)
I cannot agree with the majority that the city abandoned this property in the sense that it disclaimed title to it. What happened was that the city condemned a great many pieces of property in this proceeding. Following the completion of the project there remained the property now in controversy and small portions of other properties which had not been used in opening the street. The city thereupon advertised for sale these small leftover strips of land and transferred them to the several purchasers. In so doing it did not abuse its power of eminent domain. Since the original owners received full cash value for a fee to their property the city was within its rights in disposing of the same. It committed no act that was prejudicial to the public interest or in derogation of the rights of the original owners.
This consent decree, divesting title out of Mrs. Hicks and vesting it in the City of Nashville, has no greater probative force than a deed of conveyance. She parted with the whole title and was paid the full cash value for it. If this were a direct attack upon the conveyance by the city to its co defendant, Garfinkle, upon ground that the city acquired only an easement, no relief would be granted except on the condition that complainant refund a part of the original purchase price. The city might well defend against such an unjust claim under the maxim, "He who seeks equity must do equity."
Upon the authorities cited and for the reasons stated herein I respectfully dissent from the majority opinion.

On Petition to Rehear.
GAILOR, Justice.
Petitions to rehear have been filed by the Defendants, and by the Tennessee Title Company as amicus curiae. Under Rule 32, 185 Tenn. 879, these petitions are insufficient to justify a rehearing, since they are entirely re-argument of points which were fully covered in our former opinion. The substance of the re-argument is that since the City had authority under Code sec. 3398, to acquire the fee, that it did so in the present case. This ignores the record. The enabling Ordinance of the City specifically authorized condemnation under Code sec. 3109, "for street purposes," i. e., an easement. McHarge v. M.M. Newcomer & Co., 117 Tenn., 595, 100 S.W. 700, 9 L.R.A., N.S., 298, and cases cited on page 7 of our former opinion. Pursuant to the authority of the enabling Ordinance, the City's Attorneys commenced the condemnation "for street purposes," reciting that the bill was filed under Code sec. 3109. When the final decree was entered in the condemnation proceeding in the Circuit Court (the decree having been drawn by the City Attorney), it recited:
"And it further appearing to the Court that the City of Nashville has the right *352 under the law of eminent domain to condemn the property hereinafter described for the purposes recited in the original petition;
"It is, therefore, ordered, adjudged and decreed. * * * (that title be divested out of Catherine E. Hicks, and vested in the City of Nashville) * * * to be used for the purposes for which it was condemned. * * *" (Italics ours.)
Use of the word "condemned" in this clause which was the essence of the instrument by which title was acquired by the City, renders argument in the petition, that this was a voluntary sale by Mrs. Hicks to the City, an ignorance or contradiction of the record.
Furthermore, since the City acquired the property only "for the use for which it was condemned," a private sale of the property by the City to Defendant Garfinkle, was clearly not a right which the City had by condemnation for a public improvement.
For the reasons stated, the petitions to rehear are denied.
NEIL, C. J., and PREWITT, J., dissent.