A. L. Kornman Company

*v.*

The Metropolitan Government of Nashville and Davidson County, Tennessee.

391 S.W.2d 633.

(*Nashville,* December Term, 1964.)

Opinion filed June 2, 1965.

DAVID RUTHERFORD, THOMAS WARDLAW STEELE and W. HAROLD BIGHAM, Nashville, GULLETT, STEELE & SANFORD, Nashville, of counsel, for A. L. Kornman Co.

SEYMOUR SAMUELS, JR., Deputy Metropolitan Attorney, D. L. LANSDEN, Nashville, for Metropolitan Government of Nashville and Davidson County.

MR. JUSTICE DYER delivered the opinion of the Court.

In this opinion A. L. Kornman Company will be referred to as Appellant, and Metropolitan Government of Nashville and Davidson County, Tennessee as Appellee. A. L. Kornman Company is the corporate successor to the Akorn Realty Company and the Metropolitan Government of Nashville and Davidson County, Tennessee is the corporate successor to the City of Nashville. In this opinion when the parties are referred to as Appellant or Appellee such will include their present and former corporate status. It will clarify the issue to first give a short history of this litigation.

In 1951, by suit in the Circuit Court for Davidson County being Rule No. 35075, Appellee by eminent domain proceedings acquired a permanent easement for street purposes in property of Appellant. The eminent domain proceedings were filed in accordance with T.C.A. Sec. 23-1401 et seq., and upon the report of the jury of view Appellant was paid the sum $93,600.00 as the value of the land and $150,000.00 as the value of improvements. The property of Appellant was a lot with brick building thereon lying contiguous to the south side of what is now

the Victory Memorial Bridge over the Cumberland River in Nashville.

The lot was originally 115 feet and 4 inches wide fronting on the east side of the Public Square, and running about 224 feet to the low water mark of the river. It is the south 26 feet of this lot fronting on the Public Square and running from the square to the river that has been the subject of previous litigation and is the subject of this litigation.

On 1 July 1958 Appellee executed a quit claim deed conveying all the interest it had, if any, acquired under the eminent domain proceedings to the State of Tennessee. This deed was registered 10 July 1958 in Book 2796 of the Register's Office for Davidson County, Tennessee and the description contained in the deed is the same as that under the eminent domain proceedings in Rule No. 35075.

On 28 August 1959 Appellant filed its original bill against Appellee and D. W. Moulton, as Commissioner of Highways for the State of Tennessee, in the Chancery Court for Davidson County being Rule No. 81276. The bill, as amended, alleged that on or about 10 July 1956 the street improvement, for which an easement in this property was acquired, was completed and the boundaries and area occupied for the street improvement had been permanently established. That the need for street improvement did not include this claimed 26 feet, and such was in effect abandoned, thereby leaving in Appellant the unincumbered fee simple. That the quit claim deed from Appellee to the State of Tennessee conveyed only an easement to that property actually occupied and used for street improvement. The suit was to quiet title to this claimed 26 feet.

Appellee in answer filed, in the chancery proceedings, a plea in abatement alleging it was not a proper party to the suit, since it acted only as acquisition agent in acquiring the property for the State of Tennessee, and had conveyed all its interest to the State by the quit claim deed.

In answer to the chancery proceedings the Commissioner of Highways filed a motion to dismiss on the ground the Court was without authority, power or jurisdiction to entertain this suit against him as defendant since the suit is in effect and substance an effort to reach the property belonging to the State of Tennessee, and such suit is prohibited by T.C.A. Sec. 20-1702 and therefore in violation of Article 1, Section 17 of the Constitution of the State of Tennessee.

The Chancellor sustained the plea in abatement and dismissed Appellee as a party defendant. The motion of the Commissioner was treated as a demurrer, overruled, and a discretionary appeal allowed the Commissioner.

Upon appeal, this Court in *Kornman Co. v. Moulton,* 210 Tenn. 491, 360 S.W.2d 30 (1962) sustained the demurrer filed by the Commissioner of Highways and dismissed the suit.

In the case at bar filed 17 February 1964, Appellant alleges unincumbered ownership and that on 1 February 1964 Appellee (acting for the State) or the State of Tennessee took possession of this property for public use without compensation to the Appellant. This suit is for $55,000.00 damages for the alleged unlawful second taking.

Appellee in the case at bar filed a plea of *res judicata,* same being sustained by the trial court. This appeal fol-

lowed. The sole issue *sub judice* is whether the plea of *res judicata* is well founded and available to the Appellee. It is the opinion of this Court the trial judge committed reversible error in sustaining said plea.

The plea is actually two pleas of *res judicata*. Plea number one asserts that the case at bar is precluded by the original condemnation decree itself. The second is premised upon the assumption that the earlier chancery proceedings necessarily determined that no abandonment of the easement had occurred. There is no specification in the holding below which plea(s) was (were) sustained.

■ Plea number one would be valid of course if the condemnor had taken the full fee in the condemnation proceeding rather than a mere easement. However, the condemnation decree itself expressly stated that a mere easement was condemned. Also, it is settled that the condemnor can take no greater interest in the land condemned than is necessary for the proposed use. *Clouse v. Garfinkle,* 190 Tenn. 677, 682-683, 231 S.W.2d 345 (1950).

■■ An easement taken by eminent domain proceedings can be abandoned, just as one held by a private party may be. *Rogers v. City of Knoxville,* 40 Tenn.App. 170, 289 S.W.2d 868 (1955); and Jones on Easements, secs. 537 and 541 (1898). Thus the first plea of *res judicata* obviously cannot stand since the condemnation decree itself did not take the fee and hence the question of an abandonment of the easement could not possibly have been determined therein, the alleged abandonment occurring subsequent to the condemnation decree.

This leaves for consideration the second plea of *res judicata,* the apparent theory of which is that by sustaining the plea in abatement of Appellee, the Chancellor

necessarily found that the easement had not been abandoned prior to the transaction quitclaiming the City's interest (if any) to the State.

In a leading Tennessee case, *Pile v. Pile,* 134 Tenn. 370, 183 S.W. 1004 (1915), this Court said:

In order that a judgment may be effective as *res adjudicata,* it is essential that the party sought to be precluded thereby should have sued or been sued in both cases, in the same capacity or character and to enforce or have adjudged the same right, and it must appear not only that the *res* affected by the two suits is the same, but that the proceedings were for the same object or purpose, the same point being directly in issue. *Bank v. Smith,* 110 Tenn. [337], 338, 75 S.W. 1065; *Melton v. Pace,* 103 Tenn. 484, 53 S.W. 939.

The adjudication to be conclusive must, broadly speaking, be upon the very point put directly in issue by the pleadings. *Brewster v. Galloway,* 4 Lea (72 Tenn.) 558; *Coulter v. Davis,* 13 Lea (81 Tenn.) 451, 456; *Harris v. Mason,* 120 Tenn. 668, 115 S.W. 1146, 25 L.R.A.(N.S.) 1011. Or on a point necessarily involved. *Eakin v Riddle,* 127 Tenn 426, 155 S.W. 166, and cases cited. 134 Tenn. at 376-377, 183 S.W. at 1006.

Equally germane to the issue *sub judice* is this language from *Beare v. Burnett,* 162 Tenn. 610, 39 S.W.2d 737 (1931):

\* \* \* (I)f a judgment *necessarily* determines a particular fact, that determination is conclusive, and requires the same fact to be determined in the same way in all subsequent actions between the same parties, and that a fact is necessarily determined to exist or not to exist if its existence or non-existence *is required* to

support the judgment rendered. 162 Tenn. at 613, 39 S.W.2d at 738 (emphasis added).

Thus, the answer to the following question is determinative of the second plea of *res judicata*: did the sustaining by the Chancellor of the City's plea in abatement *necessarily* determine that no abandonment had occurred prior to the date of the quit claim deed? We think not.

■ The doctrine of *res judicata* binds the same parties standing in the same cause of action not only upon facts actually litigated in the former action, but also on those points of fact which *might have been* (but were not expressly) litigated therein. *Brewster v. Galloway,* supra; *Coulter v. Davis,* supra; *Bare v. Burnett,* supra; and *National Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 380 S.W.2d 793 (1964).

■ Also well-established is the principle that res judicata applies only where there has been a previous adjudication upon the merits. *Black Diamond Collieries v. Deal,* 150 Tenn. 474, 265 S.W. 985 (1924); and *Young v. Cumberland Grocery Co.,* 15 Tenn.App. 89 (1932).

The question now arises as to whether or not the issue of abandonmen*t might have been* adjudicated in the earlier chancery case.

In such case the City interposed a plea in abatement averring in essence it had no interest in the subject matter of the litigation. Such averment was premised upon a disclaimer allegedly resulting from the quit claim deed conveying the City's interest to the State.

■■ Bearing in mind the nature of a chancery suit to quiet title, it is manifestly clear that *after* the quitclaiming of the City's interest, if any, it was no longer a

proper party to such suit. Hence, the issue of abandonment is not such an issue which might have been litigated against the City. As the State there elected to stand behind the shield of sovereign immunity, the issue of abandonment likewise was not one which might have been litigated as against the State.

Thus, neither of the pleas of res judicata should have been sustained.

There is another equally compelling factor precluding the interposition of the second plea of *res judicata* which should here be discussed, viz., *Coulter v. Davis,* supra.

In the Coulter decision, this Court held that a decree in chancery, on final hearing, in dismissing a bill to perpetually enjoin a nuisance (the flow of water over the complainant's land by reason of defendant's milldam), was no defense to a subsequent action *at law* brought by the same party against the same defendant to recover damages from the overflow.

This Court there held that as the two causes of action differed, the doctrine of *res judicata* was inapplicable. In such a case, the doctrine of collateral estoppel (or estoppel by judgment, as it is commonly referred to) might come into play. Under this latter doctrine, only those issues *actually* litigated are conclusive on the parties in subsequent litigation. Those issues which *might have been but were not* litigated are not precluded from adjudication in a later suit. *Pile v. Pile,* supra; Restatement, Judgments sec. 68 (2) (1942); 30A Am.Jur. Judgments sec. 373 (1958).

An examination of the factual situation at bar discussed above reveals, just as in Coulter, the causes of action in this litigation are substantially different and

distinct one from the other. Accordingly, the doctrine of *res judicata* has no applicability here.

It is unnecessary to consider Appellant's remaining point concerning the alleged dissimilarity of Appellee's position in this suit and the prior litigation since the disposition taken on the other issues hereinabove discussed demands a reversal of the lower court and a remand for further proceedings not inconsistent with this opinion.

We cannot here consider the critical issue of abandonment, and accordingly our opinion is not to be construed as a holding one way or the other thereon.

The cause is reversed and remanded.

HOLMES and CHATTIN, JUSTICES, concur.

BURNETT, CHIEF JUSTICE, and WHITE, JUSTICE, not participating.